NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

OCT 25 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-50384 |
| Plaintiff-Appellee, | D.C. No. 2:16-cr-00215-PA-1 |
| v. | |
| MICHAEL MIRANDO, AKA Michael John Mirando, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Submitted October 21, 2021[**]
Pasadena, California

Before: CALLAHAN, OWENS, and FORREST, Circuit Judges.

Defendant Michael Mirando appeals from the district court's order

resentencing him to 87 months in prison for healthcare fraud in violation of 18

U.S.C. § 1347. Mirando owned Holter Labs, LLC, a company that provided

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

cardiac monitoring services for physicians through portable devices called Holter recorders, and his conviction arose from a decade-long scheme in which he fraudulently overbilled insurance companies for services Holter Labs never performed. As the parties are familiar with the facts, we do not recount them here. We review the district court's findings of fact, including the loss amount calculation, for clear error, and review unpreserved procedural objections for plain error. *See United States v. Tulaner*, 512 F.3d 576, 578 (9th Cir. 2008); *United States v. Valencia-Barragan*, 608 F.3d 1103, 1108 (9th Cir. 2010). We affirm.

1. The district court did not clearly err in finding by clear and convincing evidence that Mirando caused more than $1.5 million in actual losses and that his offense involved ten or more victims. There was sufficient evidence in the record to justify including all amounts Mirando received for services other than 24- or 48-hour electrocardiograms ("ECGs") in the loss calculation. For example, Stanton Crowley, Mirando's former business partner, had testified that Holter recorders were only capable of performing 24- or 48-hour ECGs, and there is no evidence that Holter Labs purchased new equipment with new capabilities after Crowley left. Holter Labs's advertisements and order forms, moreover, only had options for 24- or 48-hour ECGs. Thus, the district court could have concluded that Holter recorders were not capable of performing 30-day ECGs or any of the services corresponding to the five additional CPT codes that Mirando argues were never

2

proven fraudulent.

Furthermore, the district court did not clearly err by counting as a fraudulent duplicate date of service any repeat test for the same patient within a six-month period. The Sentencing Guidelines commentary makes clear that "[t]he court need only make a reasonable *estimate* of the loss," which, because of the trial judge's "unique position to assess the evidence," is entitled to deference. U.S.S.G. § 2B1.1 cmt. n.3(C) (emphasis added). There was a sufficient evidentiary basis for the district court to conclude that a six-month cutoff would provide a reasonable estimate of the loss from duplicate billing. Four patient witnesses (and their physicians) had testified that they never had more than one ECG test. Crowley testified that he never saw more than one report for the same patient within one month, which is significant given that most of the tests labeled duplicate dates of service were billed within four to six weeks of each other. And Mirando never identified a single instance of a valid repeat test within a six-month period to rebut this evidence.

The district court was not required to deduct the unpaid balance of Mirando's legitimate insurance claims from the loss amount. In calculating actual loss, the sentencing court must deduct "the fair market value of the property returned and the services rendered, by the defendant . . . to the victim before the offense was detected." *Id.* § 2B1.1 cmt. n.3(E)(i). But the district court could have

3

concluded that the amount the insurers paid to Holter Labs (and not the amount billed) was the fair market value of the services rendered. The record reflects that insurers pay healthcare providers, on average, a quarter of the amount billed, and that is roughly what Mirando received.

Moreover, the entire basis for Mirando's first appeal was that he never intended to receive payment on the full amounts billed, consistent with industry practice. In other words, the bills did not reflect what he thought the insurers owed him. We credited that argument when we vacated Mirando's initial sentence. *See United States v. Mirando*, 768 F. App'x 596, 598 (9th Cir. 2019). Thus, he is judicially estopped from now claiming that the opposite is true. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position[.]") (citation omitted).

Finally, with respect to the district court's finding that Mirando defrauded ten or more victims, we note that a victim is "any person [including companies] who sustained any part of the actual loss determined under subsection (b)(1)." U.S.S.G. § 2B1.1 cmt. n.1. Since the findings as to loss amount were not clearly erroneous, the finding of more than ten victims was not clearly erroneous either.

2. Mirando raises three procedural objections on appeal that were never

4

raised at the resentencing hearings. Not one of them amounts to plain error. *See United States v. Marcus*, 560 U.S. 258, 262 (2010). First, contrary to Mirando's contention, the district court did not "ignore[ ] or belittle[ ]" evidence of Mirando's post-sentencing rehabilitation in its application of the 18 U.S.C. § 3553(a) factors, because the court stated explicitly that, but for Mirando's rehabilitation evidence, it would have imposed a harsher sentence. Moreover, the primary case on which Mirando relies, *Pepper v. United States*, stands only for the proposition that "a district court at resentencing *may* consider evidence of the defendant's postsentencing rehabilitation," not that it *must* do so in granular detail. 562 U.S. 476, 481 (2011) (emphasis added).

Second, the district court adequately explained why it rejected the parties' joint arguments for a downward variance, when it mentioned that the variance might reinforce the belief that the potential financial returns from fraud outweigh the punishment. As this case was not especially complex or unusual, no further explanation from the district court was warranted. *See Rita v. United States*, 551 U.S. 338, 359 (2007) ("Where a matter is as conceptually simple as in the case at hand and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively."); *United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008) (en banc) ("What constitutes a sufficient explanation will necessarily vary depending upon

the complexity of the particular case[.]").

Third, the district court did not reduce resentencing to a meaningless formality or give the impression of imposing an unlawful trial penalty, as the court held three resentencing hearings at which Mirando had an opportunity to present whatever arguments and evidence as to loss amount he wished. Mirando, in sum, fails to show any procedural error, plain or otherwise.[1]

**AFFIRMED.**

---

[1] Because Mirando has established neither clear error in the Sentencing Guidelines calculation nor procedural error at the resentencing hearings, reassignment to a different district judge is unwarranted.